RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0158P (6th Cir.)
File Name: 03a0158p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

THE CINCINNATI INSURANCE CO.,

     *Plaintiff-Appellant,*

     *v.*

ZEN DESIGN GROUP, LTD. and SUN YU,

     *Defendants-Appellees.*

No. 02-2034

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 01-72823—Victoria A. Roberts, District Judge.

Argued: May 1, 2003

Decided and Filed: May 27, 2003

Before: MOORE and ROGERS, Circuit Judges; HOOD,*
District Judge.

_____

\* The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

_____

## COUNSEL

**ARGUED:** Lance R. Mather, SMITH, HAUGHEY, RICE & ROEGGE, Grand Rapids, Michigan, for Appellant. Eric R. Little, GAUNTLETT & ASSOCIATES, Irvine, California, for Appellees. **ON BRIEF:** Lance R. Mather, SMITH, HAUGHEY, RICE & ROEGGE, Grand Rapids, Michigan, for Appellant. Eric R. Little, GAUNTLETT & ASSOCIATES, Irvine, California, Mark A. Cantor, BROOKS & KUSHMAN, Southfield, Michigan, for Appellees.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge. Plaintiff-Appellant Cincinnati Insurance Company ("Cincinnati") brought an action for declaratory judgment against Defendants-Appellees Zen Design Group, Ltd. ("Zen Design") and Sun Yu ("Yu"), the president and owner of Zen Design (collectively "Zen"). Although Zen was a holder of a business insurance policy from Cincinnati, Cincinnati argued that it had no duty to defend or indemnify Zen in a suit brought against Zen by Armament Systems and Procedures, Inc. ("ASP") alleging, among other things, trademark and trade dress infringement. Both parties filed motions for summary judgment: Cincinnati desired a declaration that it had no duty to defend under its policy on any of ASP's claims, while Zen sought for Cincinnati to assume the defense of the ASP action. Because nearly all of ASP's claims against Zen were not covered under the policy, except for the possible claim of alleged infringement of slogan, the district court granted Cincinnati's summary judgment motion on indemnification for all claims other than the infringement of slogan claim. However, the district court granted Zen's motion for partial summary judgment because Zen's policy with Cincinnati covered infringement of slogan actions and

one of ASP's claims against Zen possibly raised an infringement of slogan claim thus triggering Cincinnati's duty to defend. Cincinnati timely appealed the district court's decision.

On appeal, Cincinnati argues that the district court erred in its determination that Cincinnati had an obligation to defend the ASP action. Cincinnati asserts that the phrase "The Wearable Light"[1] was not a slogan but was another name for ASP's light emitting diode ("LED"). In response, Zen argues that three of ASP's claims against it activate the coverage provisions of the policy, namely, infringement of slogan, misappropriation of advertising idea or style of doing business, and disparagement. We **AFFIRM** the district court's decision to grant Zen's partial summary judgment motion declaring that Cincinnati has a duty to defend on the infringement of slogan claim and thereby has a duty to defend the whole ASP case.[2]

---

[1]Both Zen and Cincinnati refer to the allegedly infringing phrase as "WEARABLE LIGHT." We suspect that they chose to refer to the phrase without the article "The" and using all capital letters because ASP's complaint referred to the phrase as "WEARABLE LIGHT." Because Cincinnati's obligation to defend is determined by the allegations in ASP's complaint regarding infringement of ASP's phrase, we are concerned with how the phrase was used by ASP in its advertisements. Thus, we will mimic ASP's advertisements when we refer to the phrase as "The Wearable Light" throughout this opinion. However, when we are quoting directly from the complaint or other filings in this case, we will quote the phrase as it appeared in the quoted material.

[2]Because the district court granted Cincinnati's motion for summary judgment on indemnification as to the disparagement and misappropriation claims and Zen never cross-appealed from that decision, the issue of indemnification on the disparagement and misappropriation claims is not before this court. In addition, Cincinnati does not make the fallback argument on appeal that, should this court find that Cincinnati has a duty to defend the slogan claim, Cincinnati nonetheless has no duty to indemnify with respect to that claim. Although the district court's decision on indemnification for the slogan infringement claim may have been a bit premature, we will not address this matter because Cincinnati

## I. JURISDICTION

The district court had jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332. Zen Design is a Michigan corporation with its principal place of business in Michigan, and Yu is a Michigan resident. Cincinnati is an Ohio insurance corporation with its principal place of business in Ohio. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). Here, the object of the litigation is the defense of the ASP lawsuit brought against Zen. Zen has incurred over $100,000 in legal fees and expenses by defending the ASP action. Appellees' Unopposed Mot. to Expedite Appeal at 3. Although Cincinnati's complaint failed to assert the necessary amount in controversy for diversity jurisdiction, jurisdiction is proper because "the value of the object of the litigation" exceeds $75,000. *Hunt*, 432 U.S. at 347.

Courts of appeals have jurisdiction pursuant to 28 U.S.C. § 1291, "when an appeal is taken from a final decision of the district court." *Williams v. Kentucky*, 24 F.3d 1526, 1542 (6th Cir. 1994) (internal quotation omitted). The question presented to the district court in this case was whether Cincinnati had a duty to defend or indemnify Zen in the underlying ASP action. The district court granted summary judgment in part in favor of Cincinnati, stating that Cincinnati had no duty to indemnify Zen on any of ASP's claims against Zen, except for the slogan infringement advertising injury. Joint Appendix ("J.A.") at 116 (Dist. Ct. Op.). With respect to ASP's potential slogan infringement claim, the district court denied Cincinnati's motion for summary judgment and granted Zen's partial summary judgment motion, declaring

---

chose not to raise this issue in its briefs. *See Buziashvili v. Inman*, 106 F.3d 709, 719 (6th Cir. 1997) (noting that an argument is considered waived when the party fails to present it in its appellate brief).

that Cincinnati had a duty to defend the entire action because a duty to defend against one claim, slogan infringement, invokes a duty to defend against all claims. J.A. at 117 (Dist. Ct. J.). Cincinnati appealed from the grant of partial summary judgment in favor of Zen and the partial denial of summary judgment as to Cincinnati. Although, a denial of summary judgment ordinarily is not a final appealable decision, *Hoover v. Radabaugh*, 307 F.3d 460, 465 (6th Cir. 2002), the district court's decision here was a final decision because it "resolved all disputed questions between the parties." *City of Chicago v. Atchison, Topeka & Santa Fe Ry. Co.*, 357 U.S. 77, 83 (1958).

## II.  BACKGROUND

Zen is in the business of designing handheld LED lighting devices. One of Zen's signature creations is the Starlight™ flashlight. These devices are "small flashlights designed to provide illumination in a variety of situations where light is needed quickly and easily." Appellees' Br. at 12. This flashlight was designed "to have features distinct from other flashlights, such as shape, materials used, and overall appearance." J.A. at 380 (Yu's Declaration).

From December 13, 1999 through December 13, 2002, Zen had a Businessowners Package Policy (the "policy") provided by Cincinnati. The terms of the policy cover business liability and provide Zen with coverage for "those sums that the insured becomes legally obligated to pay as damages because of . . . 'advertising injury' to which this insurance applies." J.A. at 51 (Compl., Attach. 2). Cincinnati has "the right and duty to defend the insured against any 'suit' seeking those damages." *Id.* The policy states that the coverage extends to an advertising injury "caused by an offense committed in the course of advertising your goods, products or services." *Id.* In the definitions section "advertising injury" is defined as any injury arising out of:

a.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

. . .

c.  Misappropriation of advertising ideas or style of doing business; or

d.  Infringement of copyright, title or slogan.

J.A. at 64 (Compl., Attach. 2). In addition, the policy defines "advertising" as "an advertisement, publicity article, broadcast or telecast." *Id.*

On September 14, 2000, ASP, a competitor of Zen, sued Zen and several other parties. ASP's complaint stated causes of action for: (1) trade dress infringement under 15 U.S.C. § 1125(a); (2) trademark infringement under 15 U.S.C. § 1114(1)(a); (3) unfair competition under 15 U.S.C. § 1125(a); (4) dilution under 15 U.S.C. § 1125(c); (5) common law unfair competition, and (6) violation of Wisconsin's Fraudulent Representations Act. In the complaint, brought in federal district court in Wisconsin, ASP asserted that it marketed and advertised its LED handheld flashlights using the widely-recognized trademarks "WEARABLE LIGHT" and "SAPPHIRE." J.A. at 133 (ASP Compl. ¶ 11). ASP not only claimed that Zen and others infringed on these trademarks but also asserted that Zen copied the shape and trade dress of its handheld flashlights in order to capitalize on ASP's name and business good will.

In October 2000, Zen tendered the defense of this action to Cincinnati and Cincinnati denied its responsibility for defense and indemnification coverage. In a response letter to Zen, Cincinnati cited this court's opinion in *Advance Watch Co. v. Kemper National Insurance Co.*, 99 F.3d 795 (6th Cir. 1996), for the proposition that the claims in the underlying action against Zen were not covered by the policy and therefore Cincinnati had no duty to defend against it. Thereafter, Cincinnati filed a complaint in the U.S. District Court for the

Eastern District of Michigan on July 27, 2001, seeking a declaratory judgment that it had no duty to defend or indemnify Zen in the ASP action. Cincinnati's complaint also requested costs and attorney fees. On November 8, 2001, Zen filed a motion for partial summary judgment requesting a declaration that Cincinnati had breached its contractual duty to defend Zen as well as seeking costs and attorney fees for Cincinnati's failure to defend the underlying action as provided in the insurance policy. On November 9, 2001, Cincinnati filed a cross-motion for summary judgment seeking a declaration that it had no duty to defend or indemnify Zen from the claims in the ASP suit.

Before the district court, Zen's primary argument was that because ASP's action raised an advertising injury based on misappropriation of advertising ideas or style of doing business, Cincinnati was obligated to defend the action and indemnify Zen for any damages awarded. Zen also relied on two other injuries contained in the ASP complaint, disparagement and infringement of slogan, as justification for requiring Cincinnati to provide a defense. Cincinnati successfully argued that this court's decision in *Advance Watch*[3] precluded the misappropriation of advertising ideas or

---

[3]The district court described the similarity of the issues in *Advance Watch* to the issues presented in this case:

> In *Advance Watch*, an insured pen manufacturer sought defense and indemnification from its general liability insurer, Travelers, from an underlying action for trademark infringement, unfair competition, and dilution. The insured's policy with Travelers was nearly identical to the Policy in this case, providing for defense and indemnification for advertising injury for the same enumerated "advertising injuries" [alleged here]. . . . The district court, after reviewing Michigan law concerning a liability insurer's duty to defend, as well as Michigan law on the interpretation of insurance policies, agreed with the insured's argument that "misappropriation of style of doing business" was "broad enough to embrace claims that the insured copied a design explicitly protected by trademark." The district court therefore awarded summary judgment in favor of the insured.
> . . . . In rejecting the district court's broad interpretation of the

---

style-of-doing-business claim. The district court determined that Cincinnati's policy did not cover the infringement of trade dress and trademark claims because the heart of ASP's allegation — that Zen marketed and advertised a similar product which infringed on ASP's trademarks and trade dress — was not an "advertising injury" because it did not arise predominantly from advertising activities. However, the district court determined that it could not conclude that ASP's allegations were not covered under the infringement-of-slogan portion of Cincinnati's policy. Following general principles of Michigan law, the court reasoned that any doubts as to the policy's coverage are to be resolved in favor of the insured.

The district court granted Cincinnati's motion for summary judgment in part and denied it in part. First, the court determined that the underlying lawsuit was covered under the "advertising injury" provision because the "advertising" and "causation" requirements were met. However, only the potential "infringement of slogan" claim generated a duty to defend because *Advance Watch* precluded a defense under the "misappropriation of advertising ideas or style of doing business" and the "disparagement" claims. Second, the district court granted Zen's partial summary judgment motion: because one of ASP's possible claims against Zen was based on infringement of slogan and because Zen's

---

> term "misappropriation of style of doing business," the [Sixth Circuit] noted that there existed a body of case law defining this term as a separate category of actionable conduct; therefore the term in Travelers' policy did not refer to a category or grouping of actionable conduct which includes trademark or trade dress infringement. In addition, the Court found significant that the policy definition of "advertising injury" did not include any express reference to trademark infringement. Because of the common recognition of trademark and trade dress infringement as distinct categories of actionable conduct, the Court found that if Travelers had intended to provide coverage for liability under these claims it would have referred to them by name in the policy, as it did with "infringement of copyright, title or slogan."

J.A. at 104-05 (Dist. Ct. Op.) (citations and footnote omitted).

policy with Cincinnati covered infringement of slogan actions, Cincinnati had a duty to defend. The district court reasoned that under the insurance policy, Cincinnati was obligated to defend Zen against claims for "advertising injuries of infringement of slogan." J.A. at 116 (Dist. Ct. Op.). The court concluded that because Cincinnati was obligated to defend Zen on this one potential claim, Cincinnati was responsible for the attorney fees and costs in defending the entire underlying action. In its judgment, the district court ordered that Cincinnati had a duty to indemnify Zen in the underlying infringement of slogan action and a duty to defend Zen on all of ASP's claims against Zen in the underlying action. Cincinnati now appeals from this judgment with respect to the duty-to-defend component.

## III. ANALYSIS

### A. Standard of Review

Cincinnati argues on appeal that the district court erroneously granted partial summary judgment to Zen when it determined that Cincinnati had a duty to defend Zen in the ASP action. We review de novo a district court's grant of summary judgment. *Rannals v. Diamond Jo Casino*, 265 F.3d 442, 447 (6th Cir. 2001), *cert. denied*, 534 U.S. 1132 (2002). In accordance with Federal Rule of Civil Procedure 56(c), we affirm a grant of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of proving that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477-78 (6th Cir. 1989). A dispute over a material fact cannot be "genuine" unless a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing the district court's decision to

grant summary judgment, we must view all evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. Duty to Defend

#### 1. Michigan Insurance Contracts

The parties do not dispute that Michigan law governs. Under Michigan law, courts construe an insurer's duty to defend more broadly than its duty to indemnify. *See generally Radenbaugh v. Farm Bureau Gen. Ins. Co. of Mich.*, 610 N.W.2d 272, 275 (Mich. Ct. App. 2000) ("It is well settled in Michigan that an insurer's duty to defend is broader than its duty to indemnify." (quotation omitted)); *Am. Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 523 N.W.2d 841, 844 (Mich. Ct. App. 1994) (noting that an insurer's duty to defend "extends even to nonmeritorious claims where those claims allege theories of recovery that fall within the policy"). In *Advance Watch*, we borrowed the district court's summation of Michigan's law with respect to an insurer's duty to defend an insured:

> In liability policies, the obligation of the insurer depends upon the allegations of the underlying complaint. The insurer only has a duty to defend the insured if the charges against the insured in the underlying action arguably fall within the language of the policy. However, the terminology that was used by the underlying plaintiff in the complaint is not dispositive. Instead, the analysis of the issue must include the actual cause of the injury. Any doubt as to the insurer's liability must be resolved in favor of the insured. Moreover, where only some of the claims against the insured party are covered, the insurer must defend the whole claim until it becomes apparent that no recovery is possible under the covered theory.

*Advance Watch*, 99 F.3d at 799 (quotation and citations omitted). Thus unlike the duty to indemnify, Michigan's law

requires a insurer to defend not only when the underlying claim is actually covered by the policy, but also when the underlying claim is "arguably" covered by the policy. *Allstate Ins. Co. v. Freeman*, 443 N.W.2d 734, 737 (Mich. 1989). That said, "[t]he duty to defend cannot be limited by the precise language of the pleadings," but rather arises "if there are any theories of recovery that fall within the policy." *Radenbaugh*, 610 N.W.2d at 275 (quotation omitted); *see also Freeman*, 443 N.W.2d at 737 ("[I]t is necessary to focus on the basis for the injury and not the nomenclature of the underlying claim in order to determine whether coverage exists. . . . [S]o must the allegations be examined to determine the substance, as opposed to the mere form, of the complaint." (quotation omitted)). Nonetheless, insurance companies should not be liable for risks not assumed in the language of the policy. *Farm Bureau Mut. Ins. Co. of Mich. v. Nikkel*, 596 N.W.2d 915, 920 (Mich. 1999). The insurer has the burden of showing that a specific tendered claim is not covered under its policy. *Fresard v. Mich. Millers Mut. Ins. Co.*, 327 N.W.2d 286, 289 (Mich. 1982).

In general, interpretation of insurance policies is governed by the same principles used to interpret ordinary contracts. *Nikkel*, 596 N.W.2d at 919. Michigan contract law requires us "to look at the policy as a whole, and to give meaning to all of its terms." *Advance Watch*, 99 F.3d at 799 (citing *Fresard*, 327 N.W.2d at 288-89). A contract provision that is clear and unambiguous must be "'taken and understood in [its] plain, ordinary, and popular sense.'" *Equitable Life Assurance Soc'y v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998) (brackets in original) (quoting *Mich. Mut. Ins. Co. v. Dowell*, 514 N.W.2d 185, 188 (Mich. Ct. App. 1994)). Unambiguous contract provisions are not subject to interpretation and must be enforced as written. *Id.* In contrast, contract provisions are considered ambiguous when the "terms are reasonably and fairly susceptible to multiple understandings and meanings." *Id.* Furthermore, courts applying Michigan law are instructed to "refrain from applying a 'technical or strained construction' to words in insurance policies" and all ambiguities should be

interpreted in a light most favorable to the insured. *Advance Watch*, 99 F.3d at 800 (quoting *Hosking v. State Farm Mut. Auto. Ins. Co.*, 499 N.W.2d 436, 437 (Mich. Ct. App. 1993)).

## 2. Slogan Infringement

The broad question we must address is whether the ASP complaint "arguably" stated any claim for liability for an advertising injury, as defined in Cincinnati's insurance policy. *Freeman*, 443 N.W.2d at 737. More specifically, this dispute requires us to resolve whether the allegations in ASP's complaint that Zen used the phrase "The Wearable Light" in its advertisements results in a claim for infringement of slogan covered by the insurance policy such that Cincinnati has a duty to defend the entire action.

According to Cincinnati's policy, "advertising injury" coverage has three requirements. First, there must be an advertising activity by the insured. Second, the underlying action must implicate a specific "advertising injury" covered by the policy. Third, there must be a causal relationship between the alleged advertising injury and the insured's advertising activity. *See GAF Sales & Serv., Inc. v. Hastings Mut. Ins. Co.*, 568 N.W.2d 165, 167 & n.2 (Mich. Ct. App. 1997) (interpreting identical or near identical policy language). The district court determined that in the present case there was an advertising activity with a sufficiently close nexus to the asserted liability and concluded that Cincinnati was required to defend Zen because the allegation that Zen used the phrase "The Wearable Light" in Zen's advertisements possibly raised an infringement of slogan claim. Although the district court expressed many doubts about whether "The Wearable Light" was a slogan,[4] it was

---

[4] The district court identified the following problems with considering "The Wearable Light" a slogan:

ASP never refers to WEARABLE LIGHT as a slogan; rather, it alleges that it owns a valuable trademark for this name and that it has an application for its registration pending. . . .

"unable to conclude that coverage under the Policy [was] not possible for [Zen] on this claim." J.A. at 113-14 (Dist. Ct. Op.). As Zen notes in its appellate brief, Cincinnati does not dispute that the causation and advertising injury elements of its policy are met. Accordingly, we limit our review to whether the potential slogan-infringement allegations in ASP's complaint invoke coverage under Cincinnati's policy.

Cincinnati's initial argument on appeal is that the district court's conclusion that "The Wearable Light" was a slogan was erroneous. In support, Cincinnati comments that the district court noted that ASP's complaint never referred to "The Wearable Light" as a slogan, but rather claimed that it was a valuable trademark in and of itself. Moreover, ASP's complaint states that it uses this phrase to market and sell its "SAPPHIRE" lights and never states that "it promotes the sale of those lights by creating a separate impression from the actual name of product itself." Appellant's Br. at 15. In Cincinnati's estimation, "The Wearable Light" appears to be nothing more than an alternative name for LED lights. Cincinnati relies heavily on a Second Circuit case, *Hugo Boss Fashions, Inc. v. Federal Insurance Co.*, 252 F.3d 608 (2d Cir. 2001), to support its alternative argument for finding no allegation of slogan infringement. *Hugo Boss* noted that federal courts have defined trademarked slogans as "phrases

---

WEARABLE LIGHT seems to be more a descriptive, than a promotional, phrase. Further, it appears to be far less promotional than the examples cited by the court in *Hugo Boss* [*Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608 (2d Cir. 2001)]: "Just Do It" as a slogan used to promote the house mark Nike and "Don't Leave Home Without Us" as a slogan to promote the house mark "American Express." . . . And, perhaps most importantly, ASP's complaint does not allege that it has developed good name and good will in the WEARABLE LIGHT mark to promote the SAPPHIRE mark; rather, it alleges that the WEARABLE LIGHT mark is used to directly market and sell the LED flashlights.
J.A. at 112-13 (Dist. Ct. Op.).

---

used to *promote or advertise* a house mark[5] or product mark,[6] in contradistinction to the house or product mark itself." *Hugo Boss*, 252 F.3d at 618. Cincinnati uses this case to argue that "The Wearable Light" is the house or product mark itself rather than a tool to promote or advertise the flashlights.[7]

In opposition, Zen points out, first, that the fact that ASP's complaint never called "The Wearable Light" a slogan[8] does not immunize Cincinnati from a duty to defend. Second, the definition lifted from *Hugo Boss* and cited by Cincinnati was limited to trademarked slogans, whereas in Cincinnati's policy the coverage extends to "infringement . . . of slogan," without any requirement that it be trademarked. J.A. at 64 (Compl., Attach. 2). Zen argues, therefore, that the only relevant issues in the determination of slogan infringement

---

[5] A "house mark" is a company name or its product line. *Hugo Boss*, 252 F.3d at 618 n.7.

[6] A "product mark" specifically references a particular product. *Id.*

[7] Without citing any authority, Cincinnati argues that slogans cannot be protected from infringement unless they are subject to trademark registration and protection. In Cincinnati's opinion, "The Wearable Light" cannot be subject to trademark registration and protection because (1) it fails to distinguish ASP's LED lights from any other similarly manufactured light; (2) the phrase is merely descriptive and has little or no promotional effect (as the district court noted); and (3) the phrase "The Wearable Light" has no demonstrated secondary meaning.
It is clear that not all slogans are trademarks. *See MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 342 (4th Cir. 2001). In addition, Cincinnati's insurance policy applies generally to all slogans, not just those that are trademarked, and provides coverage for "infringement . . . of slogan." Moreover, even if we were to believe that a slogan must be a trademark to receive protection from infringement, we note that "The Wearable Light" has been recently registered as a trademark.

[8] Instead, ASP alleged that it had a valuable trademark in the name "The Wearable Light" and that its trademark registration application was pending.

are: (1) whether ASP alleged in its complaint that it owned the slogan, and (2) whether ASP alleged that Zen's use of the slogan infringed on ASP's rights. Third, Zen argues that even if the *Hugo Boss* definition for trademarked slogans is applicable, the phrase "The Wearable Light" meets its requirements.

We agree with the district court's analysis and determine that summary judgment for Zen is appropriate with respect to Cincinnati's duty to defend on ASP's potential slogan infringement claim. The Michigan Court of Appeals has stated that "[a]n insurer has a duty to defend, despite theories of *liability* asserted against any insured which are not covered under the policy, if there are any theories of *recovery* that fall within the policy." *Radenbaugh*, 610 N.W.2d at 275 (quotation omitted) (emphasis added). The Michigan Supreme Court instructs courts interpreting its laws to "focus on the basis for the injury," not the precise terminology used in the complaint. *Freeman*, 443 N.W.2d at 737. Similarly, *Advance Watch* provides that "the terminology . . . used by the underlying plaintiff in the complaint is not dispositive." 99 F.3d at 799 (quotation omitted). Rather, as we stated in *Advance Watch*, the only concern is whether ASP's complaint raised charges that "arguably fall within the language of the policy." *Id.* (quotation omitted). Moreover, "[a]ny doubt as to the insurer's liability must be resolved in favor of the insured." *Id.* (quotation omitted). Thus, the complaint's failure to refer to "The Wearable Light" as a slogan and its failure to include infringement of slogan as a specific claim does not alleviate Cincinnati's duty to defend.

In the present case, ASP's complaint states that "[Zen's] use of advertisements and packaging utilizing and bearing ASP's WEARABLE LIGHT trademark in connection with the sale of handheld LED flashlights without ASP's authorization or consent, has been with full knowledge of the industry's association of the WEARABLE LIGHT mark with ASP . . . [and] was commenced with and for the purpose of willfully trading on the reputation of ASP and its flashlights."

J.A. at 140 (ASP Compl. ¶ 54). In addition, the complaint asserts that Zen "appropriat[ed] . . . ASP's WEARABLE LIGHT trademark," and that the "marketing and selling handheld LED flashlights" using ASP's "WEARABLE LIGHT" trademark has resulted in "adverse economic impact on the business and reputation of ASP."[9] J.A. at 137, 140 (ASP Compl. ¶¶ 36, 54). Freed from the precise language of the allegations, we look to the underlying complaint's basis for recovery.

In determining whether Zen's alleged use of the phrase "The Wearable Light" states a claim for slogan infringement within the definition of the policy, we turn first to the policy itself. *See Tenn. Valley Auth. v. Exxon Nuclear Co.*, 753 F.2d 493, 496 (6th Cir. 1985) ("When clear contract language itself reveals the intent of the parties, it is unnecessary to turn to rules of construction."). Unfortunately, Cincinnati never defined the term "slogan" within the policy, and thus we must use other methods to discern the term's meaning. *See Advance Watch*, 99 F.3d at 802 (advocating a resort to "an established dictionary meaning or a meaning derived from

---

[9] Additional assertions in the ASP complaint lend support to the existence of a slogan infringement claim:

> ASP advertises, markets and sells handheld LED flashlights throughout the United States using the trademarks SAPPHIRE and WEARABLE LIGHT. . . . ASP has invested a considerable amount of time, money, and effort in promoting its flashlights throughout the United States, including its promotion of the SAPPHIRE and WEARABLE LIGHT trademarks and the distinctive look of its handheld LED flashlight. . . . ASP's extensive and exclusive use of its SAPPHIRE and WEARABLE LIGHT trademarks on its goods, and in advertising thereof, has resulted in such trademarks and the distinctive look of the flashlights themselves becoming widely recognized by the public as identifying the goods of ASP and distinguishing ASP's goods from all other goods. Consequently, ASP has built up and achieved extensive good will in conjunction with the sale of said goods under its SAPPHIRE, WEARABLE LIGHT and product configuration trademarks.

J.A. at 133-34 (ASP Compl. ¶¶ 11, 16, 17).

case law"); *see also Hugo Boss*, 252 F.3d at 617 ("[E]ven where a contract does not define a particular . . . term, a body of state law or an established custom [may] fill[] in the gaps left by the drafters."). Slogan is defined in the dictionary as a "distinctive cry, phrase, or motto of any party, group, manufacturer, or person; catchword or catch phrase," *Random House Unabridged Dictionary* 1800 (2d ed. 1993).[10] "Although in the proper context . . . a slogan[] can serve as a trademark . . . [a] slogan is certainly not by definition a trademark." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 342 (4th Cir. 2001). Thus, because slogan is easily defined by resort to common tools, such as dictionaries, it will be considered unambiguous and will be interpreted " in [its] plain, ordinary, and popular sense." *Poe*, 143 F.3d at 1016 (quotation omitted) (alteration in original).

Next, we must determine whether the phrase "The Wearable Light", as used in ASP's advertisements, potentially constitutes a slogan such that Zen's alleged infringement invokes Cincinnati's duty to defend. The Joint Appendix contains an ASP advertisement for its LED flashlight that allows us to consider this question for ourselves.[11] In this

---

[10] Other definitions for slogan include: (1) "A brief attention-getting phrase used in advertising or promotion," *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1120 (1999) (emphasis omitted); and (2) "[A] phrase used repeatedly, as in promotion." *Id.* (emphasis omitted). The district court used the legal definition of trademarked slogans found in *Hugo Boss*: "phrases used to promote or advertise a house mark or product mark, in contradistinction to the house or product mark itself." *Hugo Boss*, 252 F.3d at 618-19.

[11] Cincinnati points out that the district court used Zen's advertisements when it sought to determine whether the phrase "The Wearable Light" was a slogan, and that those advertisements are "totally irrelevant" to ASP's claim that it is a slogan. Appellant's Br. at 17-19. However, the parties appear to dispute whether the district court relied on the incorrect advertisements. *Compare* Appellant's Br. at 17-18 ("The District Court undeniably relied on the wrong advertisements for its opinion. . . . Furthermore, it failed completely to discuss any

ASP advertisement, "SAPPHIRE" followed by the registered trademark emblem is in large bold print above the picture of the LED flashlight. Directly beneath "SAPPHIRE," the phrase "The Wearable Light" appears smaller and notably is not followed by the registered trademark emblem. From this advertisement, "SAPPHIRE" appears to be the name of the product, while "The Wearable Light" can easily be construed as a "catchword or catch phrase" used by the manufacturer to promote its product. *See Random House Unabridged Dictionary* 1800 (2d ed. 1993). Relying on other common definitions of slogan, "The Wearable Light," as used in the ASP advertisement also can be considered "[a] brief attention-getting phrase used in advertising or promotion." *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1120 (1999).

ASP's assertions of ownership over the phrase "The Wearable Light" together with Zen's alleged use of the same phrase in connection with its LED flashlights are arguably allegations of slogan infringement. *See Advance Watch*, 99 F.3d at 799. When a potential claim for slogan infringement is derived from the allegations in ASP's complaint, the duty to defend arises because "there are . . . theories of recovery that fall within the policy." *Radenbaugh*, 610 N.W.2d at 275 (citations and quotations omitted). Moreover, the insurer's duty to defend lasts until there is sufficient factual development to "confine the claim to a recovery that the policy [does] not cover." *Protective Nat'l Ins. Co. of Omaha v. City of Woodhaven*, 476 N.W.2d 374, 376 (Mich. 1991). Under Michigan's broad interpretation of the duty to defend, summary judgment for Cincinnati on the slogan infringement claim hardly would be proper. Thus, the district court properly granted Zen's motion for partial summary judgment

---

advertisement or other material attributable to ASP."), *with* Appellees' Br. at 28 (noting that the ASP complaint contained this advertisement ). Appellees indicate that sample advertisements from both ASP and Zen were attached to ASP's complaint. Appellees' Br. at 29. It is unclear from the district court opinion and the joint appendix what are the precise advertisements relied on by the district court.

because it is certainly arguable that slogan infringement coverage would apply in this situation, thereby triggering Cincinnati's duty to defend.[12]

## IV. CONCLUSION

Based on the foregoing analysis, we **AFFIRM** the district court's decision to deny Cincinnati's summary judgment motion in part and to grant Zen's partial summary judgment motion declaring that Cincinnati has a duty to defend on the infringement of slogan claim and thereby has a duty to defend the whole ASP case.

---

[12]A duty to defend on one claim creates a duty to defend as to all claims. *Advance Watch*, 99 F.3d at 799. Therefore, we do not need to consider whether ASP's other claims would independently trigger a duty to defend.