**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0207n.06
Filed: March 28, 2006

No(s) 04-5407/5876

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **KENNETH L. SISK**, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellant*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| **COMMERCIAL FURNITURE GROUP, INC.,** | ) | **O P I N I O N** |
| f/d/b/a **FALCON PRODUCTS, INC.**, | ) | |
| | ) | |
| *Defendant-Appellee*. | ) | |

BEFORE:     COLE, GIBBONS, and ROGERS, Circuit Judges.

**R. GUY COLE, JR., Circuit Judge.** Plaintiff-Appellant Kenneth Sisk was terminated from his position with Defendant-Appellee Falcon Products, Inc. ("Falcon"). Sisk claims that he was unlawfully terminated as a result of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et sq. Falcon contends that Sisk's position was eliminated during a lawful reduction in force. For the reasons that follow, we **AFFIRM** the district court's grant of summary judgment in favor of Falcon and **AFFIRM** the district court's denial of Sisk's motion for reconsideration.

## I.

Falcon, now doing business as the Commercial Furniture Group ("Commercial"), is primarily a commercial furniture manufacturer headquartered in St. Louis, Missouri. At the time of his termination, Sisk was a plant engineer/maintenance supervisor at Falcon's Newport,

Tennessee plant. Throughout his employment with Falcon, Sisk, a salaried employee, received positive performance reviews and salary increases. Among his responsibilities, Sisk supervised eight employees in the maintenance and housekeeping department. In early 2001, Falcon experienced a downtown in its business. On July 10, 2001, Falcon announced that it was closing one plant and significantly downsizing another. From July 10 to August 20, 2001, Falcon eliminated approximately 200 positions company-wide out of approximately 3,500 total employees. On October 5, 2001, Falcon internally announced additional measures to combat the decline in its growth of sales. Falcon eliminated ten percent of its salaried workforce, cut management salaries by ten percent, suspended merit raises, and reduced business travel. These reductions terminated nine and one-half salaried positions at the Newport plant. Additionally, Falcon laid off seventy-nine hourly employees at the Newport facility.

Prior to announcing its restructuring, Falcon instructed Mike Nelson, plant manager of the Newport facility, to review the plant's salaried positions to determine if any positions could be eliminated. Nelson claims that the primary criterion in determining which employees would be recommended for termination was expendability of the position. Nelson made the initial recommendation to terminate Sisk to David Hearn, General Manager of the Newport plant, and to Russell Armstrong, an otherwise unidentified supervisor. Nelson believed that Sisk's responsibilities could be absorbed by other employees. After Nelson, Hearn, and Armstrong determined that Sisk's position should be eliminated, they sought the approval of Cyndy Rosenbloom, Vice President of Human Resources, who approved Sisk's termination. Sisk was terminated at the age of sixty-five and was the oldest of the discharged salaried employees.

According to Falcon, Sisk's responsibilities were assigned to Gary Shelton, Bonnie Guthrie, and Nelson, all of whom were salaried employees. Falcon contends that Shelton assumed Sisk's maintenance responsibilities, Nelson assumed Sisk's day-to-day supervisory duties, and Guthrie became responsible for any environmental responsibilities handled by Sisk.

More than seven months after Sisk was terminated, Tony Lawson, a Falcon employee at the Newport plant who had been temporarily assigned to the Morristown, Tennessee plant, returned to the Newport facility as a manufacturing/production engineer. The parties dispute when Nelson knew that Lawson was returning to Newport — Nelson testified that he did not know when Lawson was returning until he actually returned; Lawson stated that he and Nelson had communicated regarding Lawson's possible return six times, beginning one month after Sisk's termination. Nelson contends that Lawson was a more valuable supervisor to Falcon than Sisk because Lawson had computer numeric control machining ("CNC") programing experience and could supervise both the only CNC programmer who remained after the lay-offs and the maintenance workers. The CNC responsibilities were critical to Falcon's operations, because virtually all raw wood and other material used to manufacture furniture had to be processed through the CNC machinery prior to final manufacturing. Further, the CNC programmer was not "school trained" and needed supervision.

Shelton was unable to perform all of Sisk's maintenance responsibilities. As a result, on May 20, 2002, Lawson assumed both the maintenance responsibilities held by Shelton and the responsibility for supervising the maintenance and housekeeping department.

Falcon asserts that Nelson decided to terminate Sisk because Nelson believed, based on his past experience with cost-containment measures, that the maintenance department would eventually

be eliminated as part of the restructuring. Nelson was correct. In July 2003, Lawson was laid off when Falcon eliminated the maintenance department.

Sisk claims that his position was not eliminated but that he was replaced by Lawson, a younger worker. Sisk argues that he was more qualified than Lawson, that production supervisors with experience equivalent to his experience were not terminated, and that Falcon overstated the CNC supervision responsibilities. On January 31, 2005, Falcon filed for bankruptcy protection and reorganized under Chapter 11 as Commercial.

On March 8, 2004, the district court granted Falcon's motion for summary judgment. The district court denied Sisk's motion for reconsideration on June 28, 2004. This timely appeal of both decisions followed.

## II.

### A. Standard of Review

We review a grant of summary judgment *de novo*. *Cincinnati Ins. Co. v. Zen Design Group, LTD*, 329 F.3d 546, 551 (6th Cir. 2003). Generally, this Court reviews a district court's denial of a motion for reconsideration for abuse of discretion. *Gage Prods. Co. v. Henkel Corp.*, 393 F.3d 629, 637 (6th Cir. 2004) (citing *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003) (additional citations omitted)). However, when we review an appeal of a motion that sought reconsideration of a grant of summary judgment, we only review the grant of summary judgment *de novo*. *Columbia Gas Transmission v. Limited Corp.*, 951 F.2d 110, 112 (6th Cir. 1991); *see also Gage Prods. Co.*, 393 F.3d at 637.

**B. Age Discrimination**

Absent direct evidence of discrimination, a plaintiff claiming that he was unlawfully terminated in violation of the ADEA must establish a prima facie case of age discrimination. A prima facie case is made by showing that: 1) the employee was in the protected group — i.e., over forty years old; 2) the employee was qualified for the position; 3) the employee was terminated; and 4) the employee was replaced by a younger person. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *King v. Buckeye Rural Elec. Coop.*, No. 99-3320, 2000 U.S. App. LEXIS 8056, at \*5 (6th Cir. Apr. 20, 2000) (citing *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 69 (6th Cir. 1982)).

If a plaintiff meets his prima facie burden, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination. *McDonnell Douglas*, 411 U.S. at 804. If the employer articulates such a reason, the burden shifts back to the plaintiff to show that this reason is pretextual. *Reeves v. Sanderson Plumbing Prods., Inc*. 530 U.S. 133, 143 (2000). Falcon concedes that Sisk meets the first three prongs of the prima facie case. Therefore, the only question is whether the fourth prong is met.

Where a termination occurs during a reduction in force, a plaintiff can satisfy the fourth prong of the *McDonnell Douglas* test by presenting "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990); *see also Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 357 (6th Cir. 1998) (same). A plaintiff in a reduction-in-force case can also satisfy the fourth prong by demonstrating that a "comparable

non-protected person was treated better." *Ercegovich*, 154 F.3d at 350 (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582–83 (6th Cir. 1992)).

While Sisk contends that he was replaced by a younger employee, the record does not bear out that assertion. It was only after seven and one-half months had passed, and the maintenance department had yet to be disbanded, that Lawson assumed most of Sisk's former responsibilities. There is no evidence that it was Falcon's intent when Sisk was terminated to shift his position to a younger worker or that Falcon actually did award the position to a younger employee. The only evidence that Sisk offers in support of his claim is the statement of Lawson — who himself was terminated at a later date as a result of Falcon's reduction in force — that Nelson contacted Lawson one month after Sisk was terminated about taking over maintenance supervisor responsibilities and discussed the topic with Lawson on several other occasions. The discussions between Nelson and Lawson indicate merely that Nelson's initial determination as to when Falcon would eliminate the maintenance department was incorrect, and that Nelson's initial determination that Sisk's position would be easily absorbed by other employees was, likewise, incorrect. Sisk was not replaced by Lawson; if anything, the employees who initially took over Sisk's responsibilities, for the most part, found that their newly assigned duties were assumed by Lawson.

Sisk asserts that he satisfies the fourth prong by showing that a comparable non-protected person was treated better. Sisk argues that younger production supervisors--who retained their positions--were comparable to him. However, Sisk had no production experience. The only comparison between Sisk and the production supervisors lies in the fact that they share the title

"supervisor."  Thus, Sisk cannot show that he was similar to the production supervisors in "all relevant aspects."  *Id*. at 352.

Sisks offers no other evidence that he was replaced by a younger employee or that a comparable non-protected employee was treated better, and thus he has failed to establish a prima facie case.  Even if Sisk were able to establish a prima facie case, Falcon articulated a legitimate, non-discriminatory reason for Sisk's termination.  Finally, there is no evidence that Sisk's termination was a pretext for discrimination.

**III.**

For the foregoing reasons, we **AFFIRM** the judgment of the district court.