NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0249n.06

No. 22-1727

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| L&K COFFEE LLC, dba Magnum Roastery; KEVIN KIHNKE, | ) ) ) | **FILED** |
| Plaintiffs-Appellants, | ) ) | Jun 01, 2023 DEBORAH S. HUNT, Clerk |
| v. | ) ) | |
| LM INSURANCE CORPORATION; LIBERTY INSURANCE CORPORATION; SELECTIVE WAY INSURANCE COMPANY; VALLEY FORGE INSURANCE COMPANY; CONTINENTAL CASUALTY COMPANY, | ) ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN OPINION |
| Defendants-Appellees. | ) ) ) | |

Before: COOK, GRIFFIN, and NALBANDIAN, Circuit Judges.

GRIFFIN, Circuit Judge.

In this insurance-coverage dispute, L&K Coffee claims its various insurance companies erroneously denied coverage to defend it against a Lanham Act false-advertising lawsuit brought by Hawaiian coffee growers. The district court concluded the applicable insurance policies did not obligate a defense and entered summary judgment in the insurance companies' favor. We affirm.

I.

Plaintiff L&K Coffee, LLC, a Michigan-based company, roasts and sells coffee products throughout the United States. (Plaintiff Kevin Kihnke owns L&K, and for ease of reference, we refer to them in the singular.) Defendants are insurance companies from whom L&K purchased

general commercial liability and umbrella insurance policies. For our purposes, there is no material distinction among the insurance policies issued by the various companies.

In early 2019, coffee growers from the Kona region of the Island of Hawai'i sued L&K and other coffee companies for "false designation of origin, false advertising, and unfair competition" in violation of the Lanham Act, 15 U.S.C. § 1125(a), in the Western District of Washington. These "Kona Plaintiffs" alleged that the defendants falsely designated the origin of the coffee they branded and distributed as "Kona" coffee "when most of the coffee beans contained in the coffee products were sourced from other regions of the world." In their view, the defendants' intentional mislabeling "cause[d] consumer confusion and mistaken purchases," thus "damaging the reputation and goodwill of the Kona name" because the defendants were ultimately passing off as authentic a product "of inferior quality." Paragraph 99 of the Kona Plaintiffs' operative complaint aptly summarizes their contentions as to L&K:

> L&K falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of KONA on the front of the packaging. With its marketing and packaging, L&K uses deceptive taglines and slogans such as "Certified," "Kona High Mountain Coffee" and "100% High MT. Arabica Coffee." On its online store, L&K describes its "Kona" coffee product as "Grown high in the mountains of Hawaii, this blended coffee has the perfect balance of light taste, full body and moderate acidity." The deceptive marketing is designed to mislead consumers into believing that L&K's Magnum Exotics "Kona" products contain coffee from the Kona District, when the coffee products actually do not contain a significant amount of Kona coffee, if any. L&K also designs its Magnum Exotics product packaging with imagery and text intended to mislead the consumer into believing that the coffee product contains coffee beans predominantly, if not exclusively, grown in Hawaii, and specifically in the Kona region. The deceptive imagery utilized by L&K includes illustrations of beaches, humming birds, hibiscus flowers, toucan birds, and tropical islands. The deceptive marketing, product names, and package designs are all intended to trade off the reputation and goodwill of the Kona name. They deliberately mislead the consumer into believing that L&K's Magnum Exotics coffee products contain significant amounts of premium Kona coffee beans in order to justify the high price L&K charges for what is actually ordinary commodity coffee.

L&K asked the insurance companies to defend and indemnify them in that matter under the policies' "personal and advertising injury" coverage. That provision generally provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

"[P]ersonal and advertising injury," in pertinent part, is defined as an "injury . . . arising out of" (1) a publication that "disparages a person's or organization's goods, products or services," or (2) "[i]nfringing upon another's . . . slogan in your advertisement." Based on this language and the Kona Plaintiffs' allegations, the insurance companies denied coverage because, as one insurer put it, "none of the offenses in the definition of 'personal and advertising injury' include false advertising, and none of the allegations in the complaint fall within any of the offenses in the definition." (They also found applicable several coverage exclusions, which we do not address here.)

Litigation ensued. After the parties filed various complaints for declaratory judgment, breach of contract, and other claims, the district court consolidated the cases. The parties then cross-moved for summary judgment, which the district court resolved in defendants' favor in an oral opinion from the bench. Plaintiff appeals.

## II.

We review de novo a district court's resolution of cross-motions for summary judgment. *Snyder v. Finley & Co., L.P.A.*, 37 F.4th 384, 387 (6th Cir. 2022). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the burden of showing that no genuine issues of material fact exist." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1093 (6th Cir. 2019). All reasonable inferences will be drawn in favor of the non-

moving party. *Mutchler v. Dunlap Mem'l Hosp.*, 485 F.3d 854, 857 (6th Cir. 2007). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### III.

The parties agree that Michigan law governs this dispute. Under Michigan law, "insurance policies are subject to the same contract construction principles that apply to any other species of contract." *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 26 (Mich. 2005). "[I]t is the insured's burden to establish that his claim falls within the terms of the policy." *Hunt v. Drielick*, 852 N.W.2d 562, 565 (Mich. 2014) (citation omitted). But any ambiguities in policy language must be "strictly construed against the insurer to maximize coverage." *Am. Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 550 N.W.2d 475, 480 (Mich. 1996).

"The duty of an insurance company to provide a defense in an underlying . . . action depends upon the allegations in the complaint and extends to allegations which even arguably come within the policy coverage." *Allstate Ins. Co. v. Freeman*, 443 N.W.2d 734, 737 (Mich. 1989) (internal quotation marks omitted). It is not "limited by the precise language of the pleadings"; rather, "[t]he insurer has the duty to look behind the third party's allegations to analyze whether coverage is possible." *Am. Bumper*, 550 N.W.2d at 481 (citation omitted). Put differently, "an insurer's duty to defend . . . does not depend solely upon the terminology used in a plaintiff's pleadings. Rather, it is necessary to focus on the basis for the injury and not the nomenclature of the underlying claim in order to determine whether coverage exists. So must the allegations be examined to determine the substance, as opposed to the mere form, of the complaint." *Allstate*, 443 N.W.2d at 737 (alterations and internal quotation marks omitted).

With these principles in mind, L&K contends the insurance companies had to defend it under the disparagement and slogan infringement components of the policies' personal and advertising injury coverage. We consider, and reject, these contentions in turn.

A.

*Disparagement*. The insurance policies do not define "disparage," so we must discern its "plain and ordinary meaning." *Rory*, 703 N.W.2d at 28. We have said that the term "disparage" means an untrue statement directed towards another's property. *See Holsapple v. Cunningham*, 817 F. App'x 95, 111 (6th Cir. 2020) (citing the Restatement (First) of Torts § 624 (1938), Black's Law Dictionary (11th ed. 2019), and various dictionaries). More specifically, we have said that under Michigan law, "a disparagement claim requires a company to make false, derogatory, or disparaging communications *about a competitor's product*." *S. Bertram, Inc. v. Citizens Ins. Co. of Am.*, 657 F. App'x 477, 481 (6th Cir. 2016).

As we have seen before in similar claims for a disparagement defense, "the word 'disparagement'—or any variation thereof—does not appear in the [Kona Plaintiffs'] complaint." *Vitamin Health, Inc. v. Hartford Cas. Ins. Co.*, 685 F. App'x 477, 480 (6th Cir. 2017); *see S. Bertram*, 657 F. App'x at 480. Nor are there any allegations that L&K published a false allegation about the Kona Plaintiffs' product. Rather, the "substance" of the Kona Plaintiffs' complaint is one anchored in L&K falsely claiming the source of their coffee was the Kona region of Hawai'i. *See Allstate*, 443 N.W.2d at 737. This, the Kona Plaintiffs alleged, violated the Lanham Act's prohibition on false designation of one's own product. *See* 15 U.S.C. § 1125(a)(1). But this is not "disparagement" as understood under Michigan law and therefore under the contract.

L&K emphasizes that we must look behind the complaint's false-advertising nomenclature to see disparagement reflected in the following factual allegations: "[B]ecause the counterfeit products are basically comprised of *generic commodity coffee*, consumers are misled into concluding that Kona coffee is *nothing special*"; and "Defendants are selling run-of-the-mill commodity coffee and labeling it as Kona coffee. A consumer who tries that *inferior* product, thinking it is Kona coffee, will conclude that Kona coffee is *not worth a premium price*." (Emphasis added). These allegations, however, speak at most to the *effect* of L&K's false advertising and thus fall short of suggesting the Kona Plaintiffs asserted L&K made these disparaging comments. Rather, the plain language of that complaint makes clear that *consumers* might conclude that premium Kona coffee was of lesser quality because L&K placed its lesser quality "Kona" coffee into the market.

L&K argues that because the Kona Plaintiffs alleged that L&K's inferior coffee will cause the Kona Plaintiffs to lose sales of their coffee products, L&K implicitly disparaged the Kona Plaintiffs' products. We "remain uncertain as to whether Michigan law recognizes claims of disparagement by implication." *Vitamin Health*, 685 F. App'x at 480. Regardless, as another court that also considered and rejected a nearly identical duty-to-defend claim noted, the "alleged false statement that its products contain Kona coffee which allegedly impugns or is derogatory to coffee from the Kona District, which then allegedly impugns Kona farmers' products or goods because they are made from Kona coffee is too remote to constitute disparagement." *Travelers Indem. Co. of Am. v. Luna Gourmet Coffee & Tea Co. LLC*, 533 F. Supp. 3d 1013, 1024 (D. Colo. 2021). And this logic accords with how we have similarly found no duty to defend for "disparagement" involving "claims that allege that an insured has made false statements about its

own products while not also making any comparison to another's products." *Vitamin Health*, 685 F. App'x at 482; *see also S. Bertram*, 657 F. App'x at 481–82.

Continuing with the look-behind-the-pleadings theme, L&K next claims certain discovery responses by the Kona Plaintiffs triggered defendants' duty to defend. First, the Kona Plaintiffs answered "yes" when asked whether they contended L&K Coffee "disparaged" their products. When asked to discuss how, they pointed back to the effect-based allegations in their complaint— that the "[d]efendants are selling run-of-the mill commodity coffee and labeling it as Kona coffee. A consumer who tries that inferior product, thinking it is Kona coffee, will conclude that Kona coffee is not worth a premium price. That consumer will be unwilling to pay a premium price for Kona in the future. . . . Every sale of falsely designated product marketed and sold by Defendant disparages Plaintiff's product." And second, witnesses testified the "bogus Kona coffee" sold by the defendants "sullied" and "undermined" the Kona Plaintiffs' reputation, and repeated the request for "an injunction on continuing to mislabel and misrepresent Kona coffee."

Defendants assert that we may not look to post-complaint discovery to determine an insurance company's duty to defend, noting the Michigan Supreme Court has commented that "[i]t is settled that the insurer's duty to defend the insured is measured by the allegation in plaintiff's pleading." *Guerdon Indus., Inc. v. Fid. & Cas. Co. of N.Y.*, 123 N.W.2d 143, 147 (Mich. 1963). That is, the focus is "on the basis for the injury" as set forth in the complaint even if not specifically set forth therein. *Allstate*, 443 N.W.2d at 737 (citation omitted); *but see Sarkis v. Cincinnati Ins. Co.*, No. 280860, 2008 WL 4891487, at *2 (Mich. Ct. App. Nov. 13, 2008) (concluding the plaintiff's deposition testimony raised factual questions about whether insurance coverage was "arguable"); *S. Bertram*, 657 Fed. App'x at 481 (nothing in complaint or "discovery responses" alleged disparagement). We need not resolve this question, for the discovery responses on which

L&K relies merely parrot the factual allegations in the Kona Plaintiffs' complaint. They focus on the result of L&K's false labeling and do not identify any potentially false statement it made about the Kona Plaintiffs' product.[1]

For these reasons, the district court correctly concluded the insurance policies' disparagement provision did not obligate a duty to defend.

B.

*Slogan infringement*. L&K also argues that the Kona Plaintiffs "arguably" asserted a slogan infringement claim even though they did not explicitly do so. We should, they say, view the Kona Plaintiffs' complaint as one based on the term "Kona" being a slogan because coffee grown in Kona is "renowned," "famous," "revered," and has "distinctive characteristics." We cannot agree.

The insurance policies do not define "slogan," so we must give it its ordinary meeting. *Rory*, 703 N.W.2d at 28. And we have said it means a "distinctive cry, phrase, or motto of any party, group, manufacturer, or person; catchword or catch phrase." *See Cincinnati Ins. Co. v. Zen Design Grp., Ltd.*, 329 F.3d 546, 556 (6th Cir. 2003) (construing Michigan law). Although it can be a trademark, it need not be. *Id.*

Upon review of the Kona Plaintiffs' complaint, we agree with the district court that the complaint does not set forth an arguable theory of recovery for slogan infringement. In the Kona Plaintiffs' own words, "only coffee grown on farms located within the Kona District of the Big

---

[1]L&K also points to a demand letter the Kona Plaintiffs sent for further support of their disparagement claim, which, in one line, asserts "[e]very advertisement and sale of falsely designated coffee products marketed and sold by L&K disparages the authentic Kona coffee grown, harvested, and sold by Plaintiffs." For the reasons set forth in Section III.B., we hesitate to consider it. And even if we did, that generic language fails to move the needle for the same reasons set forth above.

Island of Hawaii . . . can be truthfully marketed, labeled, and sold as Kona coffee." So, "[t]he term 'Kona' tells consumers their coffee comes from this distinctive geographic region." *See also Hawaii Admin. Rules* § 4-143-3 (setting forth the "Kona" region as being "the North Kona and South Kona districts on the island of Hawai'i, as designated by the State of Hawaii Tax Map"). Sure, their complaint details the flavor profiles of that kind of coffee and why consumers desire it, but it, at bottom, uses the "Kona" descriptor "as the source identifier . . . of their coffee," not as a distinct catchword. *Travelers*, 533 F. Supp. 3d at 1025. Indeed, the Kona Plaintiffs' allegations against L&K demonstrate the geographic nature of that term: "L&K . . . designs its Magnum Exotics product packaging with imagery and text intended to mislead the consumer into believing that the coffee product contains coffee beans predominantly, if not exclusively, grown in Hawaii, and specifically in the Kona region." And unlike L&K's main case in support, *Zen Design Group*, the Kona Plaintiffs made no claim of "ownership over the phrase" "Kona coffee." 329 F.3d at 557.

Finally, L&K claims a post-complaint demand letter from the Kona Plaintiffs triggered coverage because the letter asserts that they "may also prevail on a slogan infringement claim" even though it was not "specifically pled." As we noted above, there appears to be a question under Michigan law on whether and what evidence extrinsic to the complaint is relevant to determine whether a duty to defend has been triggered. That said, even considering the demand letter does not help L&K. Indeed, L&K cites no case (let alone one in Michigan) that has found a duty to defend based on a demand letter's post-complaint characterization of the underlying suit.

And in many jurisdictions that have explicitly considered extrinsic evidence like demand letters, that evidence must set forth "[k]nown or knowable extrinsic facts" that "serve to aid the interpretation of the underlying pleadings and can add substance and meaning to otherwise skeletal

third-party claims." *House of Clean, Inc. v. St. Paul Fire and Marine Ins. Co.*, 705 F. Supp. 2d 102, 109 (D. Mass. 2010) (emphasis added) (construing Massachusetts law); *accord, e.g.*, *Aetna Cas. & Sur. Co. v. Cochran*, 651 A.2d 859, 865–66 (Md. 1995); *see also* Steven Plitt, *et al.*, 14 Couch on Ins. § 200:22 (3d ed. Nov. 2022 update) ("[S]ome jurisdictions also consider known or discoverable facts and other extrinsic evidence in determining whether the insurer has a duty to defend.").

The demand letter here is merely one attorney's attempt to broadly construe his claims in order to gain settlement leverage. Those words do not, in any way, clarify what the allegations in the underlying complaint actually are nor do they constitute extrinsic facts. Thus, L&K's argument would force us to look not merely behind the allegations in the complaint, but way beyond to settlement tactics—an arena that is rife with puffery.

For these reasons, the district court correctly concluded the insurance policies' slogan-infringement provision did not obligate a duty to defend.

IV.

We affirm the district court's judgment.